FILED
2017 Sep-28  AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

JET/GAM/RBM/JBW: Oct. 2017
GJ#<u>35</u>

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **vs** | ) |
| | ) |
| **JOEL IVERSON GILBERT** | ) |
| **STEVEN GEORGE MCKINNEY** | ) |
| **DAVID LYNN ROBERSON** | ) |

## INDICTMENT

The Grand Jury charges:

## Introduction

At all times material to this Indictment:

## The Defendants

1.  Defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** were attorneys and partners at Balch & Bingham, a law firm headquartered in Birmingham, Alabama.  Defendant **STEVEN GEORGE MCKINNEY** was chair of the firm's Environmental and Natural Resources Section and defendant **JOEL IVERSON GILBERT** worked in that section.

1

Drummond Company, Inc., hired Balch & Bingham to respond to actions by the United States Environmental Protection Agency ("EPA") in north Birmingham. Defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** were the Balch & Bingham partners primarily responsible for representing Drummond Company.  Defendant **JOEL IVERSON GILBERT** was registered with the State of Alabama as a lobbyist.

2.  Defendant **DAVID LYNN ROBERSON** was Vice-President of Government and Regulatory Affairs for Drummond Company.  He was involved with defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** in responding to EPA's actions in north Birmingham on behalf of Drummond Company.  Defendant **DAVID LYNN ROBERSON** was also registered with the State of Alabama as a lobbyist.

**Representative Oliver L. Robinson, Jr.**

3.  Oliver L. Robinson, Jr., was a member of the Alabama House of Representatives from 1998 until his resignation on or about November 30, 2016. He represented District 58 and served as Vice-Chairman of the Jefferson County Legislative Delegation.  Oliver L. Robinson, Jr., was an agent of the State of Alabama, a state government that received in excess of $10,000.00 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other

form of Federal assistance during each year material to this Indictment.

4.  As a member of the Alabama House of Representatives, Oliver L. Robinson, Jr., owed a fiduciary duty to provide honest services to the State of Alabama and its citizens, free from bribery.

5.  In or about August 2004, Representative Oliver L. Robinson, Jr., established the Oliver Robinson Foundation and served as its President.  The stated purpose of the Oliver Robinson Foundation was to raise funds to advance financial literacy among students at high schools and Historically Black Colleges and Universities through publications and presentations.  Representative Oliver L. Robinson, Jr., used the Oliver Robinson Foundation to raise money to fund an annual Black Achievers Awards Gala in Birmingham, Alabama, and to publish a magazine called The Community Reinvestor Magazine.  In or about March 2005, the Oliver Robinson Foundation's application for tax-exempt status under section 501(c)(3) of the Internal Revenue Code was approved.  Representative Oliver L. Robinson, Jr., controlled the bank account opened in the name of the Oliver Robinson Foundation and received money from this account.

6.  Representative Oliver L. Robinson, Jr., also founded and was associated with for-profit entities, including Robinson & Robinson Communications, LLC, and Partnering for Progress.

3

## Environmental Issues in North Birmingham

7.  EPA is the federal agency charged with the mission of ensuring that all Americans are protected from significant risks to the environment and human health where they live, learn, and work.  EPA designated an area of north Birmingham, Alabama, including the neighborhoods of Harriman Park, Fairmont, and Collegeville, as the 35th Avenue Superfund Site based on elevated levels of arsenic, lead, and benzo(a)pyrene found during soil sampling.  In September 2013, EPA sent general notice letters to five companies potentially responsible for the pollution in north Birmingham, including ABC Coke, a division of Drummond Company.  A company determined to be responsible for pollution within the 35th Avenue Superfund Site could have faced tens of millions of dollars in cleanup costs and fines.

8.  In July 2014, EPA began considering a petition filed by GASP, a Birmingham, Alabama, environmental advocacy group, to expand the 35th Avenue Superfund Site into the Tarrant and Inglenook areas of north Birmingham and to conduct a preliminary assessment of pollutants allegedly deposited there by ABC Coke and others.  On October 9, 2014, EPA granted the petition and contracted with the Alabama Department of Environmental Management ("ADEM") to perform the preliminary assessment.  ADEM spent approximately $17,998.00

conducting the preliminary assessment and completed it on or about March 27, 2015.

9. ADEM is the state agency responsible for the implementation of environmental programs and policies, including administering federally approved or delegated environmental programs. It receives substantial funding from the federal government and is included in the State of Alabama's annual general fund budget approved by the legislature and Governor. The Alabama Environmental Management Commission ("AEMC") is the state commission responsible for developing environmental policy for the State of Alabama, selecting the ADEM Director, and advising the ADEM Director on environmental matters. AEMC holds periodic public meetings and, among other matters, considers comments from interested parties on issues involving the State of Alabama's environmental policy.

10. In September 2014, EPA proposed adding the 35th Avenue Superfund Site to the National Priorities List, a listing of the nation's Superfund Sites requiring priority attention. Placement on the National Priority List would have allowed EPA to use the federal Superfund Trust Fund to conduct long-term remedial actions at the 35th Avenue Superfund Site provided the State of Alabama agreed to fund ten percent of the costs incurred during cleanup of the site. The

contribution required from the State of Alabama would have been millions of dollars.  A listing on the National Priorities List would have allowed cleanup of the Superfund Site to proceed even if EPA was unable to persuade or compel a potentially responsible party to conduct or fund the cleanup.  EPA and the State of Alabama could attempt later to recover money spent by the federal and state governments as part of the cleanup from companies determined to be responsible parties through negotiation and/or litigation.

11.  The Governor of Alabama designated ADEM as the State of Alabama's representative on issues concerning the potential listing of the 35th Avenue Superfund Site on the National Priorities List and the expansion of the 35th Avenue Superfund Site into the Tarrant and Inglenook communities.

12.  EPA held a public comment period on the proposed listing of the 35th Avenue Superfund Site on the National Priorities List from September 22, 2014, to January 22, 2015.  In January 2015, ADEM, acting on behalf of the State of Alabama, requested that EPA's proposal be withdrawn and no further action taken until issues raised by the State could be resolved.  ADEM stated that if the issues could not be resolved the State of Alabama would request review pursuant to EPA's formal issue resolution process.  If EPA notified ADEM that, after consideration of all public comments and other information, it decided that the 35th

Avenue Superfund Site should be included among the sites proposed for listing on the National Priorities List, EPA would provide ADEM with the opportunity to discuss any issues and, if necessary, follow the formal issue resolution process prior to making a final decision.  EPA's review of the proposed listing of the 35th Avenue Superfund Site on the National Priorities List continued into 2016.

13.  Drummond Company and ABC Coke were represented by Balch & Bingham in relation to EPA's actions in north Birmingham.  Defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** were the attorneys coordinating the response to EPA's actions on behalf of ABC Coke and Drummond Company.  Defendant **DAVID LYNN ROBERSON** assisted defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** in responding to EPA's actions in north Birmingham on behalf of ABC Coke and Drummond Company.

14.  Beginning in or about 2014, and continuing until at least November 2016, the strategy employed by defendants **JOEL IVERSON GILBERT, STEVEN GEORGE MCKINNEY**, and **DAVID LYNN ROBERSON** focused on protecting ABC Coke and Drummond Company from the tremendous potential costs associated with being held responsible for pollution within the affected areas. They sought to accomplish this goal by working to prevent EPA from listing the

35th Avenue Superfund Site on the National Priorities List and expanding the Superfund site into Tarrant and Inglenook.  The plan included advising residents of north Birmingham and public officials to oppose EPA's actions.  As part of the overall strategy, Balch & Bingham paid Representative Oliver L. Robinson, Jr., through a valuable consulting contract with the Oliver Robinson Foundation to, among other things, take official action favorable to Balch & Bingham's and Drummond Company's interests in matters related to EPA's actions in north Birmingham.  One of Representative Robinson's first tasks in furtherance of this strategy was to appear before AEMC and the ADEM Director in February 2015 to make a public statement advancing the opposition of Balch & Bingham and Drummond Company to EPA's actions in north Birmingham.

15.  In 2015, defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, and **DAVID LYNN ROBERSON** formed, in Delaware, a tax-exempt corporation named Alliance for Jobs and the Economy ("AJE") and recruited corporations to contribute money to AJE to help fund opposition to EPA's actions in north Birmingham.  Drummond Company and several other corporations contributed money to AJE at the request of defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, and **DAVID LYNN ROBERSON**.  Defendant **DAVID LYNN ROBERSON** opened and

controlled AJE's bank account.  During 2015 and 2016, five corporations

contributed a total of $195,000.00 to AJE.  Defendants **JOEL IVERSON**

**GILBERT** and **DAVID LYNN ROBERSON** caused all of AJE's money, except

for minor administrative expenses, to be paid to Balch & Bingham as

reimbursement for payments to the Oliver Robinson Foundation.

### Count One
### Conspiracy
### Title 18, United States Code, Section 371

16.  The allegations in paragraphs 1 through 15 of this Indictment are

realleged as though fully set forth herein.

### THE CONSPIRACY

17.  From in or about November 2014, and continuing until in or about

November 2016, the exact dates being unknown, within Jefferson County in the

Northern District of Alabama, and elsewhere, defendants

**JOEL IVERSON GILBERT,**
**STEVEN GEORGE MCKINNEY, and**
**DAVID LYNN ROBERSON**

knowingly and willfully conspired, combined, and agreed with each other,

Representative Oliver L. Robinson, Jr., and others known and unknown to:

(a)  corruptly give, offer, and agree to give anything of value to any person intending to influence or reward an agent of the State of Alabama in connection with any business, transaction, or series of transactions involving anything of value of $5,000.00 or more of the State of Alabama, a government that receives more than $10,000.00 under a Federal program during any one year period, in violation of Title 18, United States Code, Section 666(a)(2);

(b)  corruptly solicit, demand, accept and agree to accept anything of value from any person intending to be influenced or rewarded in connection with any business, transaction or series of transactions involving anything of value of $5,000.00 or more of the State of Alabama, a government that receives more than $10,000.00 under a Federal program during any one year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

(c)  devise and intend to devise a scheme and artifice to defraud the State of Alabama and its citizens of their intangible right to Representative Oliver L. Robinson, Jr.'s, honest services through bribery by use of interstate wire transmissions, in violation of Title 18, United States Code, Sections 1343 and 1346.

## MANNER AND MEANS OF THE CONSPIRACY

18.  It was a part of the conspiracy that defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, **DAVID LYNN ROBERSON**, and Representative Oliver L. Robinson, Jr., would and did agree that the Oliver Robinson Foundation would be given a valuable consulting contract and monthly payments in exchange for, among other things, favorable official action by Representative Robinson in relation to the environmental issues in north Birmingham.

10

19.  It was a further part of the conspiracy that defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, and **DAVID LYNN ROBERSON** would and did offer, and Representative Oliver L. Robinson, Jr., would and did accept, this lucrative contract and monthly payments between Balch & Bingham and the Oliver Robinson Foundation to corruptly influence and reward Representative Oliver L. Robinson, Jr., in connection with the use of his position as a member of the Alabama House of Representatives, Vice-Chairman of the Jefferson County Legislative Delegation, and elected representative of citizens of Birmingham in support of Balch & Bingham's and Drummond Company's opposition to EPA's actions in north Birmingham.

20.  It was a further part of the conspiracy that defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, **DAVID LYNN ROBERSON**, and Representative Oliver L. Robinson, Jr., would and did conceal that Representative Robinson had agreed to take official action favorable to Balch & Bingham's and Drummond Company's interests in relation to the environmental issues in north Birmingham in exchange for a valuable contract and monthly payments.  Balch & Bingham's contract with the Oliver Robinson Foundation specifically required that "[t]he existence of this agreement shall also be kept confidential by Consultant."

11

21.  It was a further part of the conspiracy that defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, **DAVID LYNN ROBERSON**, and Representative Oliver L. Robinson, Jr., would and did agree that Representative Robinson would use his official position to pressure and advise other public officials, consistent with the position of Balch & Bingham and Drummond Company, to oppose EPA's actions in north Birmingham.

22.  It was a further part of the conspiracy that defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, **DAVID LYNN ROBERSON**, and Representative Oliver L. Robinson, Jr., would and did agree that Representative Robinson would appear before AEMC and the ADEM Director on February 20, 2015, to advance the opposition of Balch & Bingham and Drummond Company to EPA's actions in north Birmingham by using his official position to make a public statement and to pressure and advise AEMC and the ADEM Director to take and maintain a position on behalf of the State of Alabama favorable to Balch & Bingham and Drummond Company in relation to EPA's efforts to list the 35th Avenue Superfund Site on the National Priorities List and expand the Superfund Site into Tarrant and Inglenook.

23.  It was a further part of the conspiracy that defendant **JOEL IVERSON GILBERT** would and did write letters that Representative Oliver L. Robinson, Jr.,

would and did print verbatim on his official Alabama House of Representatives letterhead and sign before delivering to members of the AEMC and ADEM Director.

24.  It was a further part of the conspiracy that, four days prior to Representative Oliver L. Robinson, Jr.'s, appearance before AEMC in February 2015, he and defendant **JOEL IVERSON GILBERT** would and did sign the contract between the Oliver Robinson Foundation and Balch & Bingham.

25.  It was a further part of the conspiracy that the Oliver Robinson Foundation would and did submit invoices each month to Balch & Bingham under the contract and that the law firm would and did pay those invoices.  Checks written to the Oliver Robinson Foundation by Balch & Bingham as payment under the contract were deposited into the Oliver Robinson Foundation account at Regions Bank, a financial institution which was engaged in, and the activities of which affected, interstate commerce.

26.  It was a further part of the conspiracy that Balch & Bingham would and did submit invoices to Drummond Company and AJE in identical amounts paid to the Oliver Robinson Foundation and that defendant **DAVID LYNN ROBERSON** would and did cause Drummond Company or AJE to pay, by check or electronic funds transfer, the Balch & Bingham invoices.

13

27.  It was a further part of the conspiracy that, four days prior to the AEMC meeting in February 2015, defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** would and did cause Balch & Bingham to pay the Oliver Robinson Foundation $14,000.00 as the first payment under the contract.

28.  It was a further part of the conspiracy that Balch & Bingham would and did send an invoice in an identical amount to Drummond Company, which defendant **DAVID LYNN ROBERSON** caused Drummond Company to promptly pay.

29.  It was a further part of the conspiracy that defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, and **DAVID LYNN ROBERSON**, utilizing this payment scheme to conceal and disguise the nature, location, source, ownership, and control of the funds, would and did cause Balch & Bingham, Drummond Company, and AJE to pay the Oliver Robinson Foundation a total of approximately $360,000.00 under the contract during 2015 and 2016.

30.  It was a further part of the conspiracy that Representative Oliver L. Robinson, Jr., would and did personally receive money paid by Balch & Bingham, Drummond Company, and AJE to the Oliver Robinson Foundation.

14

**OVERT ACTS**

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

31.  In or about November 2014, defendants **JOEL IVERSON GILBERT** and **DAVID LYNN ROBERSON** engaged in discussions with Representative Oliver L. Robinson, Jr., regarding a contract between Balch & Bingham and one of Representative Oliver L. Robinson, Jr.'s, organizations; they encouraged Representative Robinson to submit a proposal to Balch & Bingham.  The conspirators discussed that Representative Oliver L. Robinson, Jr., would appear before the AEMC to advance Balch & Bingham's and Drummond Company's opposition to EPA's proposed actions by publicly pressuring and advising the AEMC and ADEM Director to take a position favorable to Balch & Bingham and Drummond Company.  Representative Oliver L. Robinson, Jr., subsequently (in February 2015) agreed to appear before the AEMC as requested.

32.  On or about November 25, 2014, Representative Oliver L. Robinson, Jr., submitted a proposal to defendant **JOEL IVERSON GILBERT** and Balch & Bingham, as requested.  Defendant **JOEL IVERSON GILBERT** emailed the proposal to defendants **STEVEN GEORGE MCKINNEY** and **DAVID LYNN**

**ROBERSON** that same day.

33.  On or about November 26, 2014, defendant **STEVEN GEORGE**

**MCKINNEY** reviewed the proposal from Representative Oliver L. Robinson, Jr.,

and met with defendant **JOEL IVERSON GILBERT** to discuss the elements of

the communications program and the structure of the new entity required to

execute the program.

34.  On December 3, 2014, defendant **JOEL IVERSON GILBERT** held a

conference with defendant **DAVID LYNN ROBERSON** to discuss

Representative Oliver L. Robinson, Jr.'s proposal.

35.  On or about December 11, 2014, at approximately 6:43 a.m.,

Representative Oliver L. Robinson, Jr., sent an email to defendant **JOEL**

**IVERSON GILBERT** stating: "Joel go back to Dave and the Drummond people

and let them know that we will need $7000 per month."  The email concluded by

stating: "Finally, make payments to the Oliver Robinson Foundation.  It was

decided the Foundation is best because all types of corps support our foundation."

Defendant **JOEL IVERSON GILBERT** forwarded this email to defendant

**DAVID LYNN ROBERSON** at approximately 7:52 a.m. that same day.

Defendant **JOEL IVERSON GILBERT** also held a conference call that same day

with defendant **DAVID LYNN ROBERSON** to discuss Representative

Robinson's proposal.

36.  At approximately 9:43 a.m. on December 11, 2014, Representative

Oliver L. Robinson, Jr., sent defendant **JOEL IVERSON GILBERT** an email

reminding Gilbert that he was meeting with EPA officials, including the Regional

Administrator, the following day.  Defendant **JOEL IVERSON GILBERT**

forwarded this email to defendants **STEVEN GEORGE MCKINNEY** and

**DAVID LYNN ROBERSON** at approximately 9:53 a.m. that same day.

37.  Approximately two minutes later, at 9:55 a.m. on December 11, 2014,

defendant **JOEL IVERSON GILBERT** sent an email to Representative Oliver L.

Robinson, Jr., stating: "Spoke to Drummond.  They have approved your request -

$7,000 per month.  Call me when you get a chance."

38.  On or about December 12, 2014, Representative Oliver L. Robinson, Jr.,

met with EPA officials to discuss issues related to north Birmingham.  Defendant

**JOEL IVERSON GILBERT** provided Representative Oliver L. Robinson, Jr., a

list of talking points consistent with Balch & Bingham's and Drummond

Company's position to guide the meeting and instructed him to secretly record the

meeting.  Representative Oliver L. Robinson, Jr., concealed from EPA that he was

in contract negotiations with Balch & Bingham to represent Balch & Bingham's

and Drummond Company's interests in relation to the environmental issues in

north Birmingham that were the subject of the meeting.

39.  On December 12, 2014, a representative from GASP made a presentation to AEMC on the importance of the proposed NPL listing for the 35th Avenue Superfund Site, emphasizing the need for ADEM and AEMC to support state funding of the cleanup efforts.  GASP submitted a copy of its presentation to AEMC several days prior to the meeting.  Defendant **JOEL IVERSON GILBERT** obtained a copy of GASP's presentation prior to the AEMC meeting and caused talking points rebutting GASP's presentation to be prepared and distributed to the AEMC Commissioners, intending that the Commissioners use the talking points during the meeting.

40.  On December 12, 2014, defendant **JOEL IVERSON GILBERT** held a conference with defendant **DAVID LYNN ROBERSON** and Representative Oliver L. Robinson, Jr., to discuss Representative Robinson's meeting with EPA officials and GASP's presentation to AEMC.

41.  On or about December 23, 2014, Representative Oliver L. Robinson, Jr., met with representatives of GASP to discuss issues related to north Birmingham. Defendant **JOEL IVERSON GILBERT** provided Representative Oliver L. Robinson, Jr., a list of talking points consistent with Balch & Bingham's and Drummond Company's position to guide the meeting and instructed him to

18

secretly record the meeting.  Representative Oliver L. Robinson, Jr., concealed

from GASP that he was in contract negotiations with Balch & Bingham to

represent Balch & Bingham's and Drummond Company's interests in relation to

the environmental issues in north Birmingham that were the subject of the meeting.

42.  On February 6, 2015, defendants **JOEL IVERSON GILBERT** and

**STEVEN GEORGE MCKINNEY** met and discussed the upcoming AEMC

meeting.

43.  On or about February 6, 2015, defendant **JOEL IVERSON GILBERT**

approved a letter he instructed an associate to write for Representative Oliver L.

Robinson, Jr., to sign requesting permission from the AEMC Chairman for

Representative Oliver L. Robinson, Jr., to appear before the regularly scheduled

AEMC meeting on February 20, 2015, "on behalf of the concerned citizens

working and residing in North Birmingham."  The letter stated: "As a state

legislator and representative of a district adjacent to the North Birmingham

superfund site, it is my duty to ensure that the North Birmingham community is

adequately represented to relevant State organizations such as AEMC.  The health

and general welfare of our community depends, in large part, on AEMC's

continued willingness to hear and actively engage in matters that are critically

important to them.  The NPL proposal is one such matter."  The letter concealed

from AEMC that Representative Oliver L. Robinson, Jr., was in contract

negotiations with Balch & Bingham to represent Balch & Bingham's and

Drummond Company's interests in relation to the environmental issues in north

Birmingham.  After Representative Oliver L. Robinson, Jr., printed the letter on his

official Alabama House of Representatives letterhead and signed it, he caused it to

be delivered to the AEMC Chairman.

44.  On February 6, 2015, defendant **JOEL IVERSON GILBERT**

forwarded a draft of this letter to defendant **DAVID LYNN ROBERSON** in an

email that stated: "David – met with Oliver.  He has agreed to submit the request to

AEMC today to meet the deadline.  However, he said he needed to think about the

politics of it before he would commit to providing comments to the AEMC.  I told

him I understood and he could always withdraw the request should he decide not to

do it.  Maybe helpful if you followed up with him on this issue.  Thanks."

Defendant **JOEL IVERSON GILBERT** also participated in a conference call

with defendant **DAVID LYNN ROBERSON** on this day and discussed the

upcoming AEMC meeting.

45.  On February 10, 2015, defendant **JOEL IVERSON GILBERT** held

conference calls with defendant **DAVID LYNN ROBERSON** and Representative

Oliver L. Robinson, Jr., to discuss Representative Robinson's appearance at the

upcoming AEMC meeting.

46.   On February 10, 2015, defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** met and discussed status and strategy regarding issues related to north Birmingham.

47.   On February 11, 2015, defendant **JOEL IVERSON GILBERT**, defendant **DAVID LYNN ROBERSON**, Representative Oliver L. Robinson, Jr., and others met to discuss the upcoming AEMC meeting.

48.   On February 11, 2015, defendant **STEVEN GEORGE MCKINNEY** read the February 6, 2015, letter written by defendant **JOEL IVERSON GILBERT** and signed by Representative Oliver L. Robinson, Jr., requesting permission to provide comments at the February AEMC meeting.   Defendant **STEVEN GEORGE MCKINNEY** also worked on strategy for those comments by Representative Robinson.

49.   On February 12, 2015, defendants **JOEL IVERSON GILBERT** and **STEVEN GEORGE MCKINNEY** met and discussed developments regarding the upcoming AEMC meeting.  Defendant **JOEL IVERSON GILBERT** also held a conference call with defendant **DAVID LYNN ROBERSON** to discuss Representative Oliver L. Robinson, Jr.'s activities.

50.  On February 12, 2015, defendant **JOEL IVERSON GILBERT** began drafting an agreement for Representative Oliver L. Robinson, Jr.

51.  On February 12, 2015, defendant **JOEL IVERSON GILBERT** made an urgent request that the Balch & Bingham accounting department write a $14,000.00 check to the Oliver Robinson Foundation.  Defendant **STEVEN GEORGE MCKINNEY** approved this payment request.

52.  On or about February 12, 2015, Balch & Bingham wrote a $14,000.00 check to the Oliver Robinson Foundation.  This and other checks written to the Oliver Robinson Foundation by Balch & Bingham as payment under the contract were deposited into the Oliver Robinson Foundation account at Regions Bank. Defendant **JOEL IVERSON GILBERT** emailed a $14,000.00 invoice to defendant **DAVID LYNN ROBERSON** on February 13, 2015, seeking reimbursement from Drummond Company for Balch & Bingham's payment to the Oliver Robinson Foundation.

53.  On or about February 13, 2015, defendant **JOEL IVERSON GILBERT** held various telephone calls with Representative Oliver L. Robinson, Jr., and defendant **DAVID LYNN ROBERSON** to discuss finalization of Representative Robinson's agreement and payment to Representative Robinson. Defendant **JOEL IVERSON GILBERT** also revised and finalized Representative

22

Robinson's agreement.

54. On or about February 16, 2015, four days before the AEMC meeting, defendant **JOEL IVERSON GILBERT** held a conference call with Representative Oliver L. Robinson, Jr., to discuss payment for Representative Robinson's activities and delivered the $14,000.00 check to Representative Robinson.  On that day, defendant **JOEL IVERSON GILBERT** and Representative Oliver L. Robinson, Jr., also signed an agreement between Balch & Bingham and the Oliver Robinson Foundation.  The contract, which was written and approved by defendant **JOEL IVERSON GILBERT**, provided that the Oliver Robinson Foundation could not "directly or indirectly engage or be concerned or interested in any business or activity which conflicts with its services to Balch or otherwise conflicts with the interests of Balch as determined solely by Balch." Moreover, the contract stated that "[t]he existence of this agreement shall also be kept confidential by Consultant."  The contract stated that the effective date of the contract was December 1, 2014.

55. On or about February 17, 2015, defendant **DAVID LYNN ROBERSON** caused Drummond Company to pay Balch & Bingham $14,000.00, the identical amount Balch & Bingham paid to the Oliver Robinson Foundation.

23

56.  On February 18, 2015, two days prior to Representative Oliver L. Robinson, Jr.'s, appearance before AEMC, defendant **JOEL IVERSON GILBERT** arranged for Representative Robinson to meet with the Chairman and Vice-Chairman of the AEMC prior to his appearance before the full AEMC.

57.  On or about February 20, 2015, defendant **JOEL IVERSON GILBERT** held a conference call with Representative Oliver L. Robinson, Jr., to discuss the AEMC meeting.

58.  On February 20, 2015, Representative Oliver L. Robinson, Jr., appeared before the AEMC and ADEM Director "to protect the residents of north Birmingham."  He told AEMC that calls from constituents led him, "as the vice chairman of the Jefferson County House delegation, to do some research on the Superfund designations and the NPL listings and to look at the North Birmingham 35th Avenue area location with some fervor."  He advised further that he had "yet to see any information that shows me that this area should be designated as a Superfund site, not to mention being put on the NPL listing."  After stating that he was "really here today to try to protect the residents of north Birmingham," Representative Robinson advised that "the thing that gets me and what is in the process of hurting the residents in that area is that the EPA has included five other corporations in on this process, but there have been no reports stating that these

24

individuals are culpable in any way.  And where that hurts the residents is the fact

that we will have decades of litigation that will occur because of these five

companies being added."  He asked the AEMC to help narrow the list of

potentially responsible parties if there were no reports or tests implicating the

corporations.  Concluding, Representative Robinson advised AEMC that if the

areas of north Birmingham are designated as a Superfund site or listed on the NPL,

the residents are "considered to live in a dump and nothing can happen there until

it's either cleaned up and after that, it will take tremendous investment to get it to

move forward."  Representative Robinson concealed from AEMC that he was

being paid by Balch & Bingham, through a valuable consulting contract with the

Oliver Robinson Foundation, to take official action favorable to the interests of

Balch & Bingham and Drummond Company.

59.  On or about March 4, 2015, defendant **JOEL IVERSON GILBERT**

wrote a second letter for Representative Oliver L. Robinson, Jr., to sign requesting

information from the ADEM Director so that Representative Robinson could

"better serve my constituents" and "develop a better understanding of ADEM's

position."  This letter was delivered to the ADEM Director and each member of the

AEMC after Representative Robinson printed it on his official Alabama House of

Representatives letterhead and signed it.  Both defendant **JOEL IVERSON**

25

**GILBERT** and Representative Robinson concealed that Representative Robinson was being paid by Balch & Bingham, through a valuable consulting contract with the Oliver Robinson Foundation, to take official action favorable to the interests of Balch & Bingham and Drummond Company.  The information that Representative Robinson received from the ADEM Director in response to this letter was provided to defendant **JOEL IVERSON GILBERT**.

60.  In or about May 2015, defendant **JOEL IVERSON GILBERT** wrote a Joint Resolution for consideration by the Alabama Senate and Alabama House of Representatives urging "the Attorney General and ADEM to combat the EPA's overreach."  After the resolution (initially designated SJR 97) was submitted to and adopted by the Alabama Senate, Representative Oliver L. Robinson, Jr., then a member of the Alabama House of Representatives' Rules Committee, voted in committee to send the resolution to the floor of the House of Representatives for consideration by the membership of the House with the recommendation that the resolution be adopted.  The resolution, which was adopted by the House of Representatives and signed by the Governor, was designated Act No. 2015-426. Both defendant **JOEL IVERSON GILBERT** and Representative Robinson concealed that Representative Robinson was being paid by Balch & Bingham, through a valuable consulting contract with the Oliver Robinson Foundation, to

take official action favorable to the interests of Balch & Bingham and Drummond Company.

61.  On June 22, 2015, defendant **JOEL IVERSON GILBERT** instructed the accounting department at Balch & Bingham not to reference the Oliver Robinson Foundation on invoices sent to Drummond Company.  He also instructed the accounting department to remove references to the Oliver Robinson Foundation on the two invoices that Balch & Bingham sent to Drummond earlier.

62.  During 2015 and 2016, pursuant to the contract between Balch & Bingham and the Oliver Robinson Foundation, Representative Oliver L. Robinson, Jr., through other individuals, communicated Balch & Bingham's and Drummond Company's opposition to EPA's actions to the residents of north Birmingham as directed by defendants **JOEL IVERSON GILBERT** and **DAVID LYNN ROBERSON**.  The Oliver Robinson Foundation communicated with the residents through an organization formed for that purpose called Get Smart Tarrant. Defendant **JOEL IVERSON GILBERT**, defendant **DAVID LYNN ROBERSON**, and Representative Robinson concealed from the residents that the Oliver Robinson Foundation and Get Smart Tarrant were being paid to represent the exclusive interests of Balch & Bingham and Drummond Company.

All in violation of Title 18, United States Code, Section 371.

27

## Count Two
## Bribery
## Title 18, United States Code, Sections 666(a)(2) and 2

63.  The factual allegations in paragraphs 1 through 62 of this Indictment are realleged as though fully set forth herein.

64.  On or about February 16, 2015, within Jefferson County in the Northern District of Alabama, and elsewhere, defendants

**JOEL IVERSON GILBERT,**
**STEVEN GEORGE MCKINNEY, and**
**DAVID LYNN ROBERSON,**

aided and abetted by each other and Representative Oliver L. Robinson, Jr., did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of the State of Alabama, a state government that received in excess of $10,000.00 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance during a one year period, in connection with any business, transaction, and series of transactions of the State of Alabama involving anything of value of $5,000.00 and more; that is, defendants **JOEL IVERSON GILBERT**, **STEVEN GEORGE MCKINNEY**, **DAVID LYNN ROBERSON**, and others corruptly gave, offered, and agreed to give a lucrative contract and monthly payments to the Oliver Robinson Foundation intending to influence and reward Representative Oliver L.

28

Robinson, Jr., for using his official position to (1) make a public statement and pressure and advise AEMC and the ADEM Director to take and maintain a position on behalf of the State of Alabama favorable to Balch & Bingham and Drummond Company in relation to EPA's efforts to list the 35th Avenue Superfund Site on the National Priorities List and expand the Superfund Site into Tarrant and Inglenook; (2) meet with and advise EPA officials to take a position favorable to Balch & Bingham and Drummond Company in relation to EPA's efforts to list the 35th Avenue Superfund Site on the National Priorities List and expand the Superfund Site into Tarrant and Inglenook; and (3) vote as a member of the State of Alabama House of Representative's Rules Committee to send the joint resolution (SJR97) written by defendant **JOEL IVERSON GILBERT** to the floor of the House of Representatives for consideration by the membership of the House with the recommendation that the resolution be adopted.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## Counts Three - Five
## Honest Services Wire Fraud
## Title 18, United States Code, Sections 1343, 1346, and 2

65.  The factual allegations in paragraphs 1 through 64 of this Indictment are realleged as though fully set forth herein.

66.  From in or about November 2014, and continuing to on or about November 30, 2016, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendants

**JOEL IVERSON GILBERT,**
**STEVEN GEORGE MCKINNEY, and**
**DAVID LYNN ROBERSON,**

aided and abetted by each other and Representative Oliver L. Robinson, Jr., devised and intended to devise a scheme and artifice to defraud the State of Alabama and its citizens of their intangible right to Representative Oliver L. Robinson, Jr.'s honest services through bribery.

## Purpose of the Scheme and Artifice

67.  The purpose of the scheme and artifice to defraud is set out in paragraphs 18 through 30 of this Indictment.  Paragraph 18 is hereby incorporated by reference as though fully set forth herein, with the words "It was part of the scheme and artifice" replacing "It was part of the conspiracy."  Paragraphs 19 through 30 are hereby incorporated by reference as though fully set forth herein, with the words "It was a further part of the scheme and artifice" replacing "It was a further part of the conspiracy" at the start of each paragraph.

## The Wire Communications

68.  On or about the date listed below for each count, in Jefferson County in the Northern District of Alabama, and elsewhere, defendants

**JOEL IVERSON GILBERT,**
**STEVEN GEORGE MCKINNEY, and**
**DAVID LYNN ROBERSON,**

for the purpose of executing the above-described scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals; that is, defendants

**JOEL IVERSON GILBERT, STEVEN GEORGE MCKINNEY,** and **DAVID LYNN ROBERSON** caused an interstate communication between Alabama and another state when the Balch & Bingham checks described below, payable to the Oliver Robinson Foundation, were deposited into the Oliver Robinson Foundation account at Regions Bank.

69.  The allegations of paragraphs 65 through 68 of this Indictment are realleged for each of counts 3 through 5 as though fully set forth therein.

| COUNT | DATE CHECK POSTED | CHECK NO. | AMOUNT |
|---|---|---|---|
| 3 | February 17, 2015 | 402024 | $14,000.00 |
| 4 | April 10, 2015 | 403375 | $7,000.00 |
| 5 | June 25, 2015 | 406971 | $7,000.00 |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

### Count Six
### Money Laundering Conspiracy
### Title 18, United States Code, Section 1956(h)

70.  The factual allegations of paragraphs 1 through 69 of this Indictment are realleged as though fully set forth herein.

### THE CONSPIRACY

71.  From in or about November 2014, and continuing until in or about November 2016, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendants

**JOEL IVERSON GILBERT,**
**STEVEN GEORGE MCKINNEY, and**
**DAVID LYNN ROBERSON**

did knowingly combine, conspire, and agree with each other and Representative Oliver L. Robinson, Jr., to knowingly conduct and attempt to conduct financial transactions involving the use of one or more monetary instruments and a financial

32

institution which was engaged in, and the activities of which affected, interstate

commerce, which transactions involved the proceeds of specified unlawful activity,

that is, bribery, knowing that the transactions were designed in whole or in part to

conceal and disguise the nature, location, source, ownership, and control of the

proceeds of specified unlawful activity, and that while conducting and attempting

to conduct such financial transactions, knew that the property involved in the

financial transactions represented the proceeds of some form of unlawful activity,

in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### MANNER AND MEANS OF THE CONSPIRACY

72.  The factual allegations of paragraphs 18 through 30 of this Indictment

are realleged as though fully set forth herein as the description of the manner and

means of the money laundering conspiracy.

All in violation of Title 18, United States Code, Section 1956(h).

A TRUE BILL

*/s/*_____
Foreperson of the Grand Jury

JAY E. TOWN
UNITED STATES ATTORNEY


*/s/ George Martin*
GEORGE A. MARTIN, JR.
Assistant United States Attorney


*/s/ Robin Mark*
ROBIN B. MARK
Assistant United States Attorney


*/s/ John Ward*
JOHN B. WARD
Assistant United States Attorney